UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ONE HANOVER, LLC,

                        Plaintiff,

- against -

HIGHGATE HOTELS, INC.,

                        Defendants.
-----------------------------------------------------------------X

Civil Action No.: 22-2723

**COMPLAINT**

**ECF case**

Plaintiff, ONE HANOVER, LLC (hereinafter "HANOVER") brings this Complaint against Defendant HIGHGATE HOTELS, INC. (hereinafter "HIGHGATE") alleging upon information and belief as follows:

## NATURE OF THE CASE

1. As set forth in the Certificate of Registration on file with the United States Patent and Trademark Office ("USPTO"), HANOVER's rights in the mark HARRY'S date back to 1972. In 2022, without notice or request for authorization, Defendant HIGHGATE began using the mark for the same services for which Plaintiff owns trademark registrations for the mark HARRY'S, *i.e.* bar services, cafes, cocktail lounges, restaurants. [USPTO Trademark Registrations 5,825,200 and 5,743,963]. HIGHGATE's unauthorized use of the mark HARRY'S NEW YORK BAR is clearly willful infringement upon Plaintiff's registered trademark HARRY'S. The addition of the geographic and generic words NEW YORK and BAR to the registered trademark HARRY'S are non-distinguishing. Defendant ignored a cease and desist letter which sought to persuade it to discontinue infringement without the need for court intervention. Wherefore, Defendant has taken the position that it will only stop its willful infringement if ordered to do so by this Honorable Court.

## PARTIES

1. Plaintiff, ONE HANOVER, LLC is a limited liability company duly organized and existing under the laws of the State of New York with its principal place of business located at 93 Pearl Street, New York, New York.

2. The Defendant HIGHGATE is duly and existing pursuant to the laws of the State of New York with a principal place of business located at 870 Seventh Avenue, Second Floor, New York, New York 10018.

3. HIGHGATE is areal estate investment and management company with over $15 billion of assets under management.

4. Park Lane Hotel located at 36 Central Park South in New York City is one of HIGHGATE's holdings.

5. The infringing use of the HARRY'S trademark is taking place at the Park Lane Hotel.

6. HANOVER owns a world-famous restaurant also located in New York City called HARRY'S.

## JURISDICTION AND VENUE

7. There is jurisdiction over this trademark action pursuant to, 28 U.S.C. Section 1338(a) and 15 U.S.C. 1116(a).

8. Venue is proper under 28 U.S.C. Sec. 1391 (b), and (c).

9. Venue is also proper in this judicial district because it is Plaintiff's principal place of business and a substantial portion of the events giving rise to the asserted claims have occurred, and continue to occur, within this district. Finally, the damage to Plaintiff and its intellectual property described herein occurred and continues to occur in this judicial district.

10. Defendant is present in the State.

11. Defendant transacts business within the State.

12. Defendant committed a tortious act outside the state causing injury inside the State.

13. Defendant committed tortious acts inside the State.

14. Defendant derived and derives substantial revenue from New York residents.

15. At all times material hereto, Defendant derived substantial revenue from interstate commerce.

16. Defendant regularly solicited and solicits business from New York residents.

## FACTS

17. HANOVER is one of the title owners of USPTO Registration No. 5,825,200, which was registered in the USPTO on August 6, 2019 for services in Class 43 including "bar services, cocktail lounges, cocktail parlor services, and restaurants". (Hanover '200 Registration). A copy is annexed hereto as **Exhibit A**.

18. HANOVER's co-owner of aforementioned registered trademark is Poulakakos 2011 Family Trust (hereinafter "TRUST").

19. As co-owner of the Hanover '200 Registration, Plaintiff has a right to bring this action and in addition, HANOVER's rights to bring this action are set forth in an agreement between TRUST and HANOVER.

20. HIGHGATE is currently using the mark HARRY'S at its Park Lane Hotel location in New York City as part of the name HARRY'S NEW YORK BAR.

21. HIGHGATE started using the mark HARRY'S as part of the name HARRY'S NEW YORK BAR on or about February 2022.

22. The marks HARRY'S and HARRY'S NEW YORK BAR are identical.

23. The marks HARRY'S and HARRY'S NEW YORK BAR are highly similar look similar, sound similar and have similar meaning.

24. Plaintiff's HARRY'S establishment is advertised in much the same way as Defendant's.

25. Portions of Plaintiff's website are copied here:





26. Portions of Defendant's website are copied here:





27. The entirety of HANOVER'S mark HARRY'S is contained in HIGHGATE's infringing mark HARRY'S NEW YORK BAR.

28. The geographic indicator NEW YORK attached to the mark HARRY'S by HIGHGATE is non-distinguishing.

29. The generic word BAR attached to the word HARRY'S NEW YORK is non-distinguishing.

30. The word HARRY'S is the dominant feature of the mark HARRY'S NEW YORK BAR.

31. The relevant consuming public, advertisers and third party hosts/concierges are likely to use the word HARRY'S to refer to Defendant's bar/restaurant.

32. The public is likely to confuse the Plaintiff's restaurant/bar HARRY'S located in New York City with the Defendant's new infringing restaurant/bar HARRY'S NEW YORK BAR.

33. The services offered by HIGHGATE in connection with the word HARRY'S are the same and/or strikingly similar to the services offered by Plaintiff under the mark HARRY'S, *i.e.* bar and restaurant services.

34. HIGHGATE was aware or should have been aware of the HARRY'200 mark before it began use of the mark HARRY'S NEW YORK BAR on the same services.

35. HIGHGATE was aware or should have been aware of the HARRY'963 mark before it began use of the mark HARRY'S NEW YORK BAR on the same services.

36. Well after HIGHGATE'S actual and constructive notice of HANOVER'S ownership of the HARRY'S marks, HIGHGATE continued infringing upon the HARRY'S mark and continues to do so despite being fully aware of HANOVER'S trademarks. HIGHGATE'S wrongful and unlawful conduct was and continues to be extremely damaging to HANOVER.

37. HIGHGATE has profited and continues to profit from its wrongful and unfairly competitive actions with respect to the HARRY'S trademark.

38. Defendant also uses the exact same mark HARRY'S to brand a hamburger it calls the HARRY'S Hamburger which is a good highly related to the Plaintiff's services identified by the same mark.

39. HIGHGATE is infringing in bad faith in that it was aware of the HARRY'S trademark registered to Plaintiff herein, started using it anyway on the same or similar services,

and has continued to market its services under a brand that contains the entirety of the HARRY'S trademark.

40. The Defendant's font for its HARRY'S NEW YORK BAR does not distinguish it from the way Plaintiff's HARRY'S mark is presented to the consuming public.

41. The HARRY'S trademark is inherently distinctive as to the services contained in the '200 registration.

42. The use of the HARRY'S trademark in connection with the services contained in the '200 registration are arbitrary and strong.

43. Since 1972, the Trust by and through its assignor have used the HARRY'S mark to identify bar and restaurant services.

44. HIGHGATE uses the infringing mark HARRY'S NEW YORK BAR to sell to similar clientele as the original HARRY'S owned by HANOVER and thus the channels of trade are similar.

45. There is such similarity in the services that a buyer's sophistication cannot be relied upon to distinguish the services of Plaintiff and Defendant.

46. There is actual confusion between HIGHGATE's HARRY'S NEW YORK BAR restaurant/bar and Plaintiff's original HARRY'S restaurant/bar.

47. HIGHGATE has in the past infringed intentionally on the HARRY'S trademark and continues to do so.

48. A search of the USPTO of registered trademarks prior to HIGHGATE'S adoption of the mark HARRY'S NEW YORK BAR would have revealed that the mark HARRY'S was already registered on the USPTO to Plaintiff and the Trust with respect to the same services.

49. Instead of requesting permission from the owners of the mark HARRY'S or selecting a different mark, HIGHGATE decided to infringe and/or turn a blind eye to the rights of the

trademark owner.

50. HIGHGATE has no relationship to European users of the mark HARRY'S NEW YORK BAR but even if it did (which it does not) any European use does not affect Plaintiff's priority in the mark HARRY'S here in the United States.

51. HIGHGATE infringed and is continuing to infringe in bad faith upon the HARRY'S mark.

52. Prior to using the HARRY'S trademark, HIGHGATE failed to search the USPTO website for existing registrations for the mark HARRY'S.

53. Defendant received the March 21, 2022 cease and desist letter annexed hereto as **Exhibit B** demanding that it stop use of the mark HARRY'S NEW YORK BAR no later than March 27, 2022.

54. After receiving the March 21, 2022 cease and desist letter, HIGHGATE took no action, *i.e.* it did not contact the author of the cease and desist letter at any time to discuss the matter and did not cease infringing use of the mark HARRY'S.

55. Restaurant and tavern patrons across the country frequented the original HARRY'S over the decades, resulting in significant sales year after year, such that the public has come to associate the mark HARRY'S with Harry Peter Poulakakos the original owner of HARRY'S who's rights passed to HANOVER and the Trust.

56. As a matter of law, Plaintiff stands in the shoes of the assignor of the mark HARRY'S in exercising the rights to it against Defendant.

57. There is a high degree of acquired distinctiveness in the HARRY'S mark. Significant sales and popularity caused recognized works of literature, film and pop-culture to feature the HARRY'S mark in connection with the source and services contained in the Hanover Application. These works include the following: Bonfire of the Vanities, the #1 New York Times

Bestseller novel written by Tom Wolfe in 1987 (still in print) and famously adapted for film starring Tom Hanks in 1990; American Psycho, the International Bestseller written by Bret Easton Ellis in 1991 (still in print) and famously adapted for film starring Christian Bale as Patrick Bateman in 2000; Let the Great World Spin, the New York Times Bestseller written by Colum McCann in 2009 (still in print); Silkworm, written by Kevin Land Patrick in 2018 (still in print); HARRY'S is also the subject of a famous HARRY'S tie by internationally recognized designer Nicole Miller. Covers and/or other evidence of the same are collectively annexed as **Exhibit C**.

58. If the is not stopped from using the mark HARRY'S NEW YORK BAR, the relevant purchasing public will begin to mistakenly believe that the HARRY'S mark with respect to restaurant and bar services is owned by Defendant.

59. Hanover is the senior user but the public will be confused as to source.

60. Plaintiff has a right to control its reputation and the quality and standards of the services offered in connection with HARRY'S mark.

## COUNT II –COUNTERFEITING OF REGISTERED MARK

61.     HANOVER repeats and realleges the allegations of paragraphs 1 through 60 as if fully set forth herein.

62.     15 U.S.C. § 1114(1)(a). Section 45 of the Lanham Act, 15 U.S.C. § 1127, defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *Burberry Ltd. v. Euromoda, Inc*. 2009 WL 1675080 (S.D.N.Y. 2009). *See also, Tiffany & Co. v. Costco Wholesale Corp*., 127 F. Supp. 3d 241, 254–55 (S.D.N.Y. 2015), rev'd on other grounds, 971 F.3d 74 (2d Cir. 2020)

63.     The word HARRY'S in HARRY'S NEW YORK BAR is a spurious mark and is identical to and/or substantially indistinguishable from HARRY'S.

64. The mere addition of the words NEW YORK BAR to an exact duplicate of the Plaintiff's registered mark on the same or similar goods does not change it from being a counterfeit.

65. The font used by Defendant is indistinguishable from the font used by Plaintiff on the same or similar goods.

66. Defendant used and sold services and products that displayed the counterfeit mark in a commercially similar way as Plaintiff's original HARRY'S services.

67. Defendant's counterfeit services are indistinguishable from Plaintiff's services sold in connection with the original HARRY'S mark.

68. Defendants prominently advertised and promoted the counterfeit mark in connection with their sale of their non-original HARRY'S goods and services.

### COUNT III –CYBERSQUATTING BY USE OF DOMAIN NAME

69. HANOVER repeats and realleges the allegations of paragraphs 1 through 68 as if fully set forth herein.

70. 15 U.S.C. § 1125(d)(1)(A) provides that: A person shall be liable in civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person –(i)   Has   a   bad faith intent to profit from that mark; and(ii)   Registers, traffics in, or uses a domain name that . . . is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark …

71. Defendant cannot deny that it was aware of the Plaintiff's registered HARRY'S trademark before it started using it in commerce.

72. Defendant adoped the domain name and continued use of https://www.parklanenewyork.com/harrys-new-york-bar/ after they were actually aware of the

Plaintiff's registered mark which was distinctive well before Defendant's use.

73.     The Defendant's domain name opens up to web pages advertising and promoting Defendant's infringing mark.

74.     Defendant's domain name is identical and/or confusingly similar to the Plaintiff's HARRY'S mark.

75.     The said Defendant's activities as alleged herein therefore violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1). The Defendant's acts have caused, and will continue to cause, irreparable injury to the Plaintiff.

WHEREFORE, the plaintiff, HANOVER., prays:

A.      That this Court adjudge that Defendant has infringed on HANOVER's HARRY'S trademark, in violation of HANOVER's rights under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1124 and 1125.

B.      That this Court adjudge that Defendant's use of the mark HARRY'S is a counterfeit of the Plaintiff's HARRY'S mark as defined by 15 U.S.C. 1116.

C.      That Defendants and all owners, suppliers, distributors, sales companies, sales representatives, salespersons, representatives, printers, officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their distributors and retailers, be preliminarily and permanently enjoined and restrained from (1) reproducing, copying, displaying, the word mark HARRY'S or any mark similar to, or substantially indistinguishable therefrom including HARRY'S NEW YORK BAR, and (2) advertising, promoting, importing, selling, marketing, offering for sale or otherwise distributing their infringing products in connection with the word mark HARRY'S or any

mark similar to, or substantially indistinguishable therefrom, and (3) holding themselves out as, or otherwise representing themselves to be, the owners of, or otherwise authorized to use, the "HARRY'S" Trademark or (4) from in any other way infringing HANOVER's "HARRY'S" word mark or (5) effecting assignments or transfers, forming new entities or associations or utilizing any other means or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in numbers (1) through (4) hereof.

D.    That Defendant be required to deliver up for destruction all products, brochures, signs, packaging, labels, promotional materials, advertisements, prints, catalogues, wrappers, receptacles, and other written or printed materials that bear the "HARRY'S" word, and any plates, molds, and other materials for making such infringing products.

E.    That Defendant be directed to file with this Court and to serve upon HANOVER within three (3) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs C and D, pursuant to 15 U.S.C. 1116(a).

F.    That HANOVER recover three times Defendant's profits arising from its acts of trademark infringement and/or false designation of origin, pursuant to 15 U.S.C. 1117(a).

G.    That HANOVER recover its reasonable attorneys' fees incurred in this action pursuant to 15 U.S.C 1117(a) and (b).

H.    That HANOVER have and recover its taxable costs and disbursements incurred in this action pursuant to 15 U.S.C. 1117(a).

I.    That HANOVER have and recover treble damages on the violations of its Registered trademark pursuant to 15 U.S.C. 1117(b).

J.    That HANOVER have such other and further relief as the Court may deem just and proper.

K.   That the website https://www.parklanenewyork.com/harrys-new-york-bar/ be cancelled pursuant to 15 U.S.C. § 1125(d)(2)(D)(i).

L.   That Plaintiff recover Statutory Damages of $2,000,000 against Defendant for each infringement in accordance with 15 U.S.C. §1117(c) and 15 U.S.C. §1117(d).

Dated: New York, New York
April 1, 2022

                              THE BOSTANY LAW FIRM PLLC

                              By:   s/John P. Bostany
                                    s/Samantha B. Welborne
                                    *Attorneys for Plaintiff*
                                    3 World Financial Center- 24th Floor
                                    New York, New York 10281
                                    (212) 530-4400
                                    john@bozlaw.com