```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ONE HANOVER, LLC,
                                                                    Civil Action No.: 22-2723 (VM)
                        Plaintiff,
- against -                                                         AMENDED COMPLAINT

THE WITKOFF GROUP LLC, SYMPHONY CP
(PARK LANE) OWNER LLC, NEW VALLEY LLC
and HIGHGATE HOTELS, INC.

                        Defendants.
------------------------------------------------------------------X
```

Plaintiff, ONE HANOVER, LLC (hereinafter "HANOVER") brings this Amended Complaint against the above named Defendants alleging upon information and belief as follows:

## NATURE OF THE CASE

1. As set forth in the Certificate of Registration on file with the United States Patent and Trademark Office ("USPTO"), HANOVER's rights in the mark HARRY'S date back to 1972. Well after Plaintiff's date of first use in commerce, and without notice or request for authorization, Defendants began infringing use of the mark, including for the same services for which Plaintiff owns trademark registrations for the mark HARRY'S, *i.e.* bar services, cafes, cocktail lounges, restaurants. [USPTO Trademark Registrations 5,825,200 and 5,743,963]. HIGHGATE's unauthorized use of the mark HARRY'S in the phrase HARRY'S NEW YORK BAR is willful infringement and counterfeiting upon Plaintiff's registered trademark HARRY'S. The addition of the geographic and generic words NEW YORK and BAR to the registered trademark HARRY'S are non-distinguishing. Defendant HIGHGATE HOTELS, INC. which manages the establishment for the co-defendant owners refused to comply with a March 21, 2022 cease and desist letter which sought to persuade it to discontinue infringement without the need for court intervention. After being served with an April 1, 2022 Complaint, the copying continued unabated. Wherefore, Defendants will only stop if ordered to do so by this Honorable Court.

# PARTIES

2. Plaintiff, ONE HANOVER, LLC is a limited liability company duly organized and existing under the laws of the State of New York with its principal place of business located at 93 Pearl Street, New York, New York.

3. The Defendant HIGHGATE HOTELS, INC. (hereinafter "HIGHGATE") is duly organized and existing pursuant to the laws of the State of Texas with a place of business located at 870 Seventh Avenue, Second Floor, New York, New York 10018.

4. HIGHGATE is real estate investment and management company with over $15 billion of assets under management.

5. SYMPHONY CP (PARK LANE) OWNER LLC (hereinafter "SYMPHONY") is duly organized and existing pursuant to the laws of the State of Delaware with its principal place of business located at 40 W. 57th St, Suite 1620, City and State of New York.

6. THE WITKOFF GROUP LLC (hereinafter "WITCOFF GROUP") is duly organized and existing pursuant to the laws of the State of Delaware with its principal place of business located at 40 W. 57th St, Suite 1620, City and State of New York.

7. SYMPHONY is a subsidiary of the WITCOFF GROUP.

8. NEW VALLEY LLC is duly organized and existing pursuant to the laws of the State of Delaware with its principal place of business located at 4400 Biscayne Blvd, 10th Floor, Miami, Florida

9. NEW VALLEY LLC is a subsidiary of Vector Group Ltd.

10. Park Lane Hotel located at 36 Central Park South in New York City is one of HIGHGATE's holdings.

11. Park Lane Hotel located at 36 Central Park South in New York City is one of SYMPHONY's holdings.

12. Park Lane Hotel located at 36 Central Park South in New York City is one of WITCOFF GROUP's holdings.

13. Park Lane Hotel located at 36 Central Park South in New York City is one of NEW VALLEY LLC's holdings.

14. Defendants manage and operate the Park Lane Hotel.

15. The infringing use of the HARRY'S trademark is taking place at the Park Lane Hotel and over the internet.

16. HANOVER is owner of a world-famous restaurant also located in New York City called HARRY'S.

## JURISDICTION AND VENUE

17. There is jurisdiction over this trademark action pursuant to, 28 U.S.C. Section 1338(a) and 15 U.S.C. 1116(a).

18. Venue is proper under 28 U.S.C. Sec. 1391 (b), and (c).

19. Venue is also proper in this judicial district because it is Plaintiff's principal place of business and a substantial portion of the events giving rise to the asserted claims have occurred, and continue to occur, within this district. Finally, the damage to Plaintiff and its intellectual property described herein occurred and continues to occur in this judicial district.

20. Defendants are present in the State.

21. Defendants transact business within the State.

22. Defendants committed a tortious act outside the state causing injury inside the State.

23. Defendants committed tortious acts inside the State.

24. Defendants derived and derive substantial revenue from New York residents.

25. At all times material hereto, Defendants derived substantial revenue from interstate commerce.

26. Defendants regularly solicited and solicits business from New York residents.

27. Defendants promote the products and services infringing upon Plaintiff's trademarks online and thru the internet.

28. Defendants were and are constructively and actually aware of the "CHARLOTTE" trademarks and nevertheless elected to violate trademark law.

29. Defendants are engaged in interstate and international commerce.

30. Defendants own and operate an interactive website offering services and making sales in connection with unauthorized use of the HARRY'S trademark.

31. The sale, promotion and availability of infringing services and products causes injury to the Plaintiff and New York residents by misleading the purchasing public as to the source of original HARRY'S restaurants and bars.

32. Plaintiff is suffering its injury in loss of business and reputation at its principal place of business in New York City.

33. Prior to causing the Plaintiff injury, Defendants had Notice that the Plaintiff was located in New York City.

34. Plaintiff's Trademark Registrations identify Plaintiff's place of business in New York City and Defendants knew or should have known that they were causing injury to a New York resident.

35. At all times relevant hereto, Defendants expected or should have reasonably expected their actions to have consequences in New York and to be hailed into a New York Court.

## FACTS

36. HANOVER is one of the title owners of USPTO Registration No. 5,825,200, which was registered in the USPTO on August 6, 2019 for services in Class 43 including "bar services, cocktail lounges, cocktail parlor services, and restaurants". (Hanover '200 Registration).

37. HANOVER's co-owner of aforementioned registered trademark is Poulakakos 2011 Family Trust (hereinafter "TRUST").

38. As co-owner of the Hanover '200 Registration, Plaintiff has a right to bring this action and in addition, HANOVER's rights to bring this action are set forth in an agreement between TRUST and HANOVER.

39. Defendants are currently using the mark HARRY'S at their Park Lane Hotel location in New York City and on the internet in connection with the word phrase HARRY'S NEW YORK BAR, on signage, on menus, in advertisements, on the internet in connection with services offered and sales of food, beverage, rooms and services at Park Lane Hotel.

40. Defendants started using the mark HARRY'S as part of the phrase HARRY'S NEW YORK BAR on or about January 2022.

41. The marks HARRY'S and HARRY'S NEW YORK BAR are identical.

42. The marks HARRY'S and HARRY'S NEW YORK BAR are highly similar, look similar, sound similar and have similar meaning.

43. The commercial use of Plaintiff's HARRY'S mark is mirrored by Defendants.

44. The entirety of HANOVER'S mark HARRY'S is contained in Defendants infringing mark HARRY'S NEW YORK BAR.

45. The geographic indicator NEW YORK attached to the mark HARRY'S is non-distinguishing.

46. The generic word BAR attached to the word HARRY'S NEW YORK is non-distinguishing.

47. The word HARRY'S is the dominant feature of the mark HARRY'S NEW YORK BAR.

48. The relevant consuming public, advertisers and third party hosts/concierges are likely to use the word HARRY'S to refer to Defendants' bar/restaurant.

49. The public is likely to confuse the Plaintiff's restaurant/bar HARRY'S located in New York City with the Defendants' new infringing restaurant/bar HARRY'S NEW YORK BAR.

50. Many of the services offered by Defendants in connection with the word HARRY'S are the same and/or strikingly similar to the services offered by Plaintiff under the mark HARRY'S, *i.e.* bar and restaurant services.

51. Defendants were aware or should have been aware of the HARRY'S mark before they began use of it in the phrase HARRY'S NEW YORK BAR on the same services.

52. Well after Defendants actual and constructive notice of HANOVER'S ownership of the HARRY'S marks, Defendants continued infringing upon the HARRY'S mark and continue to do so despite being fully aware of HANOVER'S HARRY'S trademarks.

53. Defendants wrongful and unlawful conduct was and continues to be extremely damaging to HANOVER.

54. Plaintiff has priority over Defendants' with respect to right to use the mark HARRY'S with respect to the services contained in the HARRY'S registered marks [USPTO Trademark Registrations 5,825,200 and 5,743,963].

55. Defendants have profited and continue to profit from its wrongful and unfairly competitive actions with respect to the HARRY'S trademark.

56. Defendants also use the exact same mark HARRY'S to brand a hamburger they named the HARRY'S Hamburger which is a good highly related to the Plaintiff's services identified by the same mark.

57. Defendants are infringing in bad faith in that they were aware of the HARRY'S trademark registered to Plaintiff herein, started using it anyway on the same or similar services, and have continued to market its services under a brand that contains the entirety of the HARRY'S trademark.

58. The Defendants' font for its HARRY'S NEW YORK BAR does not distinguish it from the way Plaintiff's HARRY'S mark is presented to the consuming public.

59. Defendants use standard character font in many of their advertisements and uses of the word phrase HARRY'S NEW YORK BAR.

60. Plaintiff uses standard character font in many of its advertisements and uses of the mark HARRY'S.

61. The script font that Plaintiff uses at times is not indistinguishable from front that Defendants also use in connection with the HARRY'S mark.

62. The HARRY'S trademark is inherently distinctive as to the services contained in the '200 registration.

63. The use of the HARRY'S trademark in connection with the services contained in the '200

registration are arbitrary and strong.

64. Since 1972, the Trust by and through its assignor have used the HARRY'S mark to identify services and goods including the services contained in the '200 Registration.

65. Defendants use the infringing mark in the phrase HARRY'S NEW YORK BAR to sell to similar clientele as Plaintiff and the channels of trade are similar.

66. There is such similarity in the services that a buyer's sophistication cannot be relied upon to distinguish the services of Plaintiff and Defendants.

67. There is actual confusion between Defendants' HARRY'S NEW YORK BAR restaurant/bar and Plaintiff's original HARRY'S restaurant/bar.

68. DEFENDANTS have in the past infringed intentionally on the HARRY'S trademark and continue to do so.

69. A search of the USPTO of registered trademarks prior to DEFENDANTS' adoption of the mark HARRY'S NEW YORK BAR would have revealed that the mark HARRY'S was already registered on the USPTO to Plaintiff and the Trust with respect to the same services.

70. Instead of requesting permission from the owners of the mark HARRY'S or selecting a different mark, DEFENDANTS decided to infringe and/or turn a blind eye to the rights of the trademark owner.

71. DEFENDANTS have no relationship to European users of the mark HARRY'S NEW YORK BAR but even if they did any European use does not affect Plaintiff's priority in the mark HARRY'S here in the United States.

72. DEFENDANTS infringed and are continuing to infringe in bad faith upon the HARRY'S mark.

73. Prior to using the HARRY'S trademark, DEFENDANTS failed to search the USPTO website for existing registrations for the mark HARRY'S.

## COUNT I –TRADEMARK INFRINGEMENT 15 U.S.C. 1117(a) and 1125(a)

74. HANOVER repeats and realleges the allegations of paragraphs 1 through 73 as if fully set forth herein.

75. Defendants have infringed upon the Plaintiff's Registered Trademarks.

76. Long after the adoption and use by HANOVER of the HARRY'S Trademarks, and with at least constructive notice of the registration of the HANOVER Trademarks, Defendants knowingly and intentionally used reproductions, copies or colorable imitations of the HARRY'S Trademark to market, promote, identify design, manufacture, sell and distribute its services and either continue to do so or threaten to do so.

77. Defendants have been offering for sale services using a confusingly similar name, e.g., HARRY'S NEW YORK BAR.

78. Defendants, by their acts as aforesaid, have taken advantage of the creativity of the TRUST in coining the HARRY'S mark, and of the good will developed by the TRUST in the mark HARRY'S.

79. Defendants' use of HANOVER's word mark results in confusion as to sponsorship, association, source and origin of HANOVER and Defendants' services.

80. Having adopted and used the HARRY'S mark after HANOVER, Defendants are junior users of the mark.

81. The acts of Defendants complained of herein have been without the authorization or consent of HANOVER or the TRUST.

82. Defendants' acts have caused and will continue to cause irreparable harm and injury to HANOVER and the TRUST in creating confusion as to sponsorship and loss of reputation that the TRUST had developed as the exclusive vendor of HARRY'S services and that HANOVER has a right to as Licensee.

83. Defendants are creating reverse confusion so that the public believe or will come to believe that Defendants are actually the owner of the HARRY'S brand.

84. There is likelihood of confusion of the source of the genuine HARRY'S services and the services of the second comer.

85. Restaurant and tavern patrons across the country frequented the original HARRY'S over the decades, resulting in significant sales year after year, such that the public has come to associate the mark HARRY'S with Harry Peter Poulakakos the original owner of HARRY'S who's rights passed to HANOVER and the TRUST by Assignment.

86. As a matter of law, Plaintiff stands in the shoes of the assignor of the mark HARRY'S in exercising the rights to it against Defendants.

87. There is a high degree of acquired distinctiveness in the HARRY'S mark. Significant sales and popularity caused recognized works of literature, film and pop-culture to feature the HARRY'S mark in connection with the source and services contained in the Hanover Application. These works include the following: Bonfire of the Vanities, the #1 New York Times Bestseller novel written by Tom Wolfe in 1987 (still in print) and famously adapted for film starring Tom Hanks in 1990; American Psycho, the International Bestseller written by Bret Easton Ellis in 1991 (still in print) and famously adapted for film starring Christian Bale as Patrick Bateman in 2000; Let the Great World Spin, the New York Times

Bestseller written by Colum McCann in 2009 (still in print); Silkworm, written by Kevin Land Patrick in 2018 (still in print); HARRY'S is also the subject of a famous HARRY'S tie by internationally recognized designer Nicole Miller.

88. If the Defendants is not stopped from using the mark HARRY'S NEW YORK BAR, the relevant purchasing public will begin to mistakenly believe that the HARRY'S mark with respect to restaurant and bar services is owned by Defendants.

89. Hanover is the senior user but the public will be confused as to source.

90. Plaintiff has a right to control its reputation and the quality and standards of the services offered in connection with HARRY'S mark.

91. The activities of Defendants, complained of herein, constitute infringement of the HANOVER Trademarks in violation of Sections 35 and 43(a) of the Lanham Act.

## COUNT II –COUNTERFEITING OF REGISTERED MARK

92. HANOVER repeats and realleges the allegations of paragraphs 1 through 91 as if fully set forth herein.

93. 15 U.S.C. § 1114(1)(a). Section 45 of the Lanham Act, 15 U.S.C. § 1127, defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." *Burberry Ltd. v. Euromoda, Inc*. 2009 WL 1675080 (S.D.N.Y. 2009). *See also, Tiffany & Co. v. Costco Wholesale Corp*., 127 F. Supp. 3d 241, 254–55 (S.D.N.Y. 2015), rev'd on other grounds, 971 F.3d 74 (2d Cir. 2020)

94. The word HARRY'S in HARRY'S NEW YORK BAR is a spurious mark and is identical to and/or substantially indistinguishable from HARRY'S.

95. The mere addition of the words NEW YORK BAR to an exact duplicate of the Plaintiff's registered mark on the same or similar goods does not change it from being a

counterfeit.

96. The font used by Defendants is indistinguishable from the font used by Plaintiff on the same or similar goods.

97. The style and color of the font used by Defendants in connection with how the mark HARRY'S appears in their websites is at times identical to the style and color of HARRY'S as used by Plaintiff.

97. Defendants used and sold services and services that displayed the counterfeit mark in a commercially similar way as Plaintiff's original HARRY'S services.

98. Defendants's counterfeit services are indistinguishable from Plaintiff's services sold in connection with the original HARRY'S mark.

99. Defendants prominently advertised and promoted the counterfeit mark in connection with their sale of their non-original HARRY'S goods and services.

100. The indistinguishable appearance of Defendants' HARRY'S in the word phrase HARRY'S NEW YORK BAR with respect to identical goods is likely to cause confusion.

100. Defendants cannot deny that it was aware of the Plaintiff's registered HARRY'S trademark before it started using it in commerce.

101. Defendants made widespread use of the the mark HARRY'S over the internet as well including in the URL https://www.parklanenewyork.com/harrys-new-york-bar/.

102. The Defendants's URL opens up to web pages advertising and promoting Defendants's infringing mark.

103. The Defendants' acts have caused, and will continue to cause, irreparable injury to the Plaintiff.

WHEREFORE, the plaintiff, HANOVER., prays:

A. That this Court adjudge that Defendants have infringed on HANOVER's HARRY'S trademark, in violation of HANOVER's rights under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1124 and 1125.

B. That this Court adjudge that Defendants' use of the mark HARRY'S is a counterfeit of the Plaintiff's HARRY'S mark as defined by 15 U.S.C. 1116.

C. That Defendants and all owners, suppliers, distributors, sales companies, sales representatives, salespersons, representatives, printers, officers, directors, agents, servants, employees, affiliates, attorneys, successors, and assigns, and all persons in active concert or participation therewith, including but not limited to their distributors and retailers, be preliminarily and permanently enjoined and restrained from (1) reproducing, copying, displaying, the word mark HARRY'S or any mark similar to, or substantially indistinguishable therefrom including HARRY'S NEW YORK BAR, and (2) advertising, promoting, importing, selling, marketing, offering for sale or otherwise distributing their infringing services in connection with the word mark HARRY'S or any mark similar to, or substantially indistinguishable therefrom, and (3) holding themselves out as, or otherwise representing themselves to be, the owners of, or otherwise authorized to use, the "HARRY'S" Trademark or (4) from in any other way infringing HANOVER's "HARRY'S" word mark or (5) effecting assignments or transfers, forming new entities or associations or utilizing any other means or devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in numbers (1) through (4) hereof.

D. That Defendants be required to deliver up for destruction all services, brochures, signs, packaging, labels, promotional materials, advertisements, prints, catalogues, wrappers, receptacles, and other written or printed materials that bear the "HARRY'S"

word, and any plates, molds, and other materials for making such infringing services.

E. That Defendants be directed to file with this Court and to serve upon HANOVER within three (3) days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with paragraphs C and D, pursuant to 15 U.S.C. 1116(a).

F. That HANOVER recover three times Defendants's profits arising from its acts of trademark infringement and/or false designation of origin, pursuant to 15 U.S.C. 1117(a).

G. That HANOVER recover its reasonable attorneys' fees incurred in this action pursuant to 15 U.S.C 1117(a) and (b).

H. That HANOVER have and recover its taxable costs and disbursements incurred in this action pursuant to 15 U.S.C. 1117(a).

I. That HANOVER have and recover treble damages on the violations of its Registered trademark pursuant to 15 U.S.C. 1117(b).

J. That HANOVER have such other and further relief as the Court may deem just and proper.

L. That Plaintiff recover Statutory Damages of $2,000,000 against Defendants for each infringement in accordance with 15 U.S.C. §1117(c).

Dated: New York, New York
May 16, 2022

                                  THE BOSTANY LAW FIRM PLLC

                                  By:    s/John P. Bostany
                                                s/Samantha B. Welborne
                                                *Attorneys for Plaintiff*
                                                3 World Financial Center- 24th Floor
                                                New York, New York 10281
                                                (212) 530-4400
                                                john@bozlaw.com