UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/8/2023

---

ONE HANOVER, LLC,

                  Plaintiff,

       - against -

THE WITKOFF GROUP LLC, SYMPHONY CP
(PARK LANE) OWNER LLC, NEW VALLEY LLC
and HIGHGATE HOTELS, INC.,

                  Defendants.

---

22 Civ. 2723 (VM)

**DECISION AND ORDER**

---

**VICTOR MARRERO, United States District Judge.**

Plaintiff One Hanover, LLC ("Hanover" or "Plaintiff") brings this action against defendants The Witkoff Group LLC ("Witkoff"), Symphony CP (Park Lane) Owner LLC ("Symphony"), New Valley LLC ("New Valley"), and Highgate Hotels, Inc. ("Highgate") (collectively "Defendants"). The amended complaint alleges two causes of action against Defendants: trademark infringement and counterfeiting of a registered mark in violation of 15 U.S.C. Sections 1125 and 1114, respectively. (See "Amended Complaint," Dkt. No. 14.)

Now pending before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See "Motion and Memorandum" or "Motion," Dkt. No. 28.) For the reasons set forth below, the Motion is **DENIED** in part and **GRANTED** in part.

## I.  **BACKGROUND**

A.   FACTUAL BACKGROUND[1]

Hanover co-owns a registered trademark for the mark "HARRY'S", which is the name of a bar and restaurant it owns and operates in lower Manhattan. The "HARRY'S" mark stems from the name of the original owner of HARRY'S, Harry Peter Poulakakos. The "HARRY'S" mark (the "Poulakakos Mark") was first used in 1972 but was not registered until 2019.[2] (See Amended Complaint ¶¶ 1, 36, 64.) The Poulakakos Mark is a word mark and does not claim any particular font style, size, or color, and is registered for use in commerce related to bar and restaurant services. (See "Poulakakos Mark Registration," Dkt. No. 1-1.)

Defendants Highgate, Symphony, Witkoff, and New Valley manage and operate the Park Lane Hotel, located in midtown Manhattan on Central Park South, the southern border of Central Park. Since January 2022, the Park Lane Hotel has operated HARRY'S NEW YORK BAR (the mark for which, "HARRY'S NEW YORK BAR" will be referred to as the "Bar Mark", and when

---

[1] Except as otherwise noted, the following background derives from the Amended Complaint. The Court takes all facts alleged therein as true and construes the justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Section II below.

[2] There are two "HARRY'S" marks co-owned by Hanover. The mark referenced here was registered in August 2019 and bears registration number 5,825,200. The other mark, which is also for "HARRY'S", bears registration number 5,743,963 and was registered in May 2019.

described together with the Poulakakos Mark the two will be referred to as the "Marks"), a restaurant and bar open to hotel guests and the public. The Park Lane Hotel's HARRY'S NEW YORK BAR has no relationship to the restaurant and bar operated by Hanover, and neither has a relationship to the famed Parisian bar opened in 1911, also named HARRY'S NEW YORK BAR. Two months after the opening of HARRY'S NEW YORK BAR, Hanover sent Highgate a cease-and-desist letter asserting that the "HARRY'S" portion of "HARRY'S NEW YORK BAR" infringed on the Poulakakos Mark. (See Dkt. No. 1-2.)

B.    PROCEDURAL HISTORY

     Hanover initiated this action on April 1, 2022, naming Highgate as the sole defendant. (See "Complaint," Dkt. No. 1.) Hanover subsequently filed the Amended Complaint, adding Witkoff, Symphony, and New Valley as Defendants (See Amended Complaint.) Defendants then exchanged pre-motion letters with Hanover in anticipation of their motion to dismiss the Amended Complaint. (See Dkt. Nos. 28-29, 48.) Following Defendants' notification to the Court that the parties had failed to avoid motion practice, the Court directed the parties to advise whether they consented to a ruling based on the letters exchanged or sought supplemental or full briefing. (See Dkt. No. 51.) Hanover filed a supplemental brief and stated that

it consented to a ruling grounded on the pre-motion letters and Hanover's supplemental brief. (See "Supplemental Brief," Dkt. No. 52.) Defendants informed the Court that they consented to a ruling based on the pre-motion letters the parties exchanged. (See Dkt. No. 56.)

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In other words, a complaint should not be dismissed when the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First

Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). In this context, the Court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The requirement that a court accept the factual allegations in the complaint as true does not, however, extend to legal conclusions. See Iqbal, 556 U.S. at 678.

A district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

## III. DISCUSSION

Hanover raises two claims in the Amended Complaint. First, it asserts that Defendants' use of "HARRY'S" in "HARRY'S NEW YORK BAR" has infringed on the Poulakakos Mark in violation of 15 U.S.C. Section 1125(a). Second, Hanover contends that use of the word "HARRY'S" in "HARRY'S NEW YORK BAR" renders the Bar Mark a counterfeit of the Poulakakos

5

Mark, in violation of 15 U.S.C. Section 1114(1)(a). Defendants have moved to dismiss Hanover's infringement claim against Witkoff and New Valley, arguing that the Amended Complaint fails to satisfy Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)") because there are no particularized allegations that Witkoff or New Valley used the Bar Mark in commerce.[3] (See Motion and Memorandum at 4-5.) Defendants have also moved to dismiss the counterfeiting claim entirely, arguing that the Marks are neither identical nor substantially indistinguishable. (See Motion and Memorandum at 2-4.) For the reasons explained below, Defendants' Motion is **DENIED** in part and **GRANTED** in part.

A.  THE TRADEMARK INFRINGEMENT CLAIM AGAINST WITKOFF AND NEW VALLEY

Under 15 U.S.C. Section 1125(a)(1), any person who "uses in commerce any word, term, name, symbol, or device, or any combination thereof," which "is likely to cause confusion, or to cause mistake . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1).

---

[3] The Court notes that while Defendants initially also sought the dismissal of Highgate on these grounds, Defendants appear to have dropped that argument in their reply. (Compare Motion and Memorandum at 4-5 with "Reply," Dkt. No. 48, at 2-3.) To the extent this change was unintended, the Court's analysis of the trademark infringement claim against Witkoff and New Valley would apply equally to Highgate and reach the same result.

Allegations regarding a person's use of a mark in commerce must satisfy Rule 8(a)(2). Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Although [Rule 8(a)] does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Atuahene v. City of Hartford, 10 F. App'x. 33, 34 (2d Cir. 2001) (internal quotation marks omitted). Provided fair notice is given, however, "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." Vantone Grp. Ltd. Liability Co. v. Yangpu NGT Indus. Co., Ltd., No. 13 Civ. 7639, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015) (quoting Hudak v. Berkley Group, Inc., No. 13 Civ. 0089, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014)).

The Court finds that the Amended Complaint raises particularized allegations that Witkoff and New Valley used the Bar Mark in commerce, albeit the Amended Complaint does

so through a series of allegations asserted against all Defendants. For example, the Amended Complaint alleges that

> Defendants are currently using the mark HARRY'S at their Park Lane Hotel location in New York City and on the internet in connection with the word phrase HARRY'S NEW YORK BAR, on signage, on menus, in advertisements, on the internet in connection with services offered and sales of food, beverage, rooms and services at Park Lane Hotel.

(Amended Complaint ¶ 39.) The collective scope of those allegations does not undermine the provision of fair notice of Hanover's claim against Witkoff and New Valley and the basis for that claim; the Bar Mark infringes on the Poulakakos Mark and Witkoff and New Valley have been named as defendants for their alleged use of the Bar Mark in the operation and advertising of HARRY'S NEW YORK BAR. The Court notes, however, that contrary to the suggestions made in the Supplemental Brief, the Amended Complaint does not allege other forms of liability on Witkoff and New Valley's part, such as contributory infringement, alter ego liability, or vicarious liability. (See Supplemental Brief at 2.)

Discovery may or may not ultimately support the Amended Complaint's allegations of infringement. At this stage of the litigation, however, the infringement claim against Witkoff and New Valley is sufficiently stated and may proceed. Accordingly, Defendants' Motion to dismiss Hanover's

trademark infringement claim against Witkoff and New Valley is **DENIED**.

B.   THE COUNTERFEITING CLAIM

Counterfeiting is an aggravated form of trademark infringement that "seeks to trick the consumer into believing he or she is getting the genuine article." Gucci America, Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012). Under 15 U.S.C. Section 1114(1), any person who "without the consent of the registrant" "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant." 15 U.S.C. § 1114(1); see also Gruner + Jahr USA Publ. v. Meredith Corp., 991 F.2d 1072, 1075-76 (2d Cir. 1993) (discussing the elements of a claim under 15 U.S.C. § 1114).[4]

---

[4] In the Second Circuit, "claims for infringement must be analyzed under a two-prong test that looks first to whether the allegedly infringed mark 'is entitled to protection,' and second to whether use of the allegedly infringing mark 'is likely to cause consumers confusion as to the origin or sponsorship' of the products to which it is attached." Cross Commerce Media, Inc. v. Collective, Inc., 841 F. 3d 155, 168 (2d Cir. 2016). The second prong, "likelihood of confusion[,] must be analyzed with reference to the eight factors first articulated in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961), one of which is 'the degree of similarity between the two marks.'" Id. Where counterfeiting is alleged,

A "counterfeit" mark is defined by statute as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Though the terms "spurious" and "substantially indistinguishable" are not defined by statute, a "spurious mark" has been construed to mean "one that is 'fake' and 'deceptively suggests an erroneous origin,'" Tiffany & Co. v. Costco Wholesale Corp. 971 F.3d 74, 95 n.18 (2d Cir. 2020) (quoting Spurious, Black's Law Dictionary (11th Ed. 2019) (alterations omitted)) while "substantially indistinguishable" has been construed to mean that there is "more than a mere similarity between the marks, or [more than] a 'colorable imitation.'"[5] Coty Inc. v. Excell Brands, LLC, 277 F. Supp. 3d 425, 468 (S.D.N.Y. 2017) (collecting cases). As the term suggests, to be "substantially indistinguishable," the marks "must be nearly identical . . . with only minor differences which would not be apparent to an unwary observer." Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 499 (S.D.N.Y. 2015) (quoting

however, "the Court need not undertake a factor-by-factor analysis under Polaroid because counterfeits, by their very nature, cause confusion." Coach, Inc. v. Horizon Trading USA Inc., 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012).

[5] By statute, the "term 'colorable imitation' includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive." 15 U.S.C. § 1127.

Consol. Cigar Corp. v. Monte Cristi de Tabacos, 58 F. Supp. 2d 188, 196 (S.D.N.Y. 1999)).

Consistent with the idea that a counterfeit is intended to trick an unwary consumer, a court assesses the allegedly counterfeit mark against the registered mark as they would appear to an average consumer and not in the abstract. See GMA Accessories, Inc. v. BOP, LLC, 765 F. Supp. 2d 457, 471-72 (S.D.N.Y. 2011); Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., No. 12 Civ. 1416, 2015 WL 4468083, at *2 (S.D.N.Y. July 8, 2015). For example, "in the case of a word mark, it cannot be enough that one word used in the allegedly offending mark is the same, with no reference to font, color, typeface, or context." GMA Accessories, Inc., 765 F. Supp. 2d at 472.

The Court finds that the Poulakakos Mark and the Bar Mark are neither identical nor substantially indistinguishable. Contrary to Hanover's arguments, the presence of "HARRY'S", which forms the entirety of the Poulakakos Mark, in the Bar Mark is not determinative because it cannot be viewed in isolation from the other words in the Bar Mark. (See "Opposition" at 3-4, Dkt. No. 29; Amended Complaint ¶¶ 94-95.) When the Marks are compared as they appear to an average consumer, specifically juxtaposing

11

"HARRY'S" and "HARRY'S NEW YORK BAR", it is readily apparent that the presence of the words "NEW YORK BAR" is more than a minor difference. See, e.g., GMA Accessories, Inc., 765 F. Supp. 2d at 472 (holding that two marks on clothing, "Charlotte" and "Charlotte Solnicki," were neither identical nor substantially indistinguishable).

The style and color of the font used to portray "HARRY'S" in the Marks do not alter this conclusion. Though Hanover alleges and argues that the parties use the same font and color in many of their advertisements and other presentations of the Marks (see Opposition at 3-4; Amended Complaint ¶¶ 58-61, 96-97), this argument holds little weight given that the Poulakakos Mark is only a word mark and "CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR." (Poulakakos Mark Registration.) The Court also does not find the Bar Mark to be a spurious mark, as it is not a "fake" mark.

Accordingly, Defendants' Motion to dismiss Hanover's counterfeiting claim is **GRANTED**.

## IV.   ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 28) filed by defendants The Witkoff Group LLC ("Witkoff"), Symphony CP (Park Lane)

Owner LLC, New Valley LLC ("New Valley"), and Highgate Hotels, Inc. (collectively, "Defendants") to dismiss the trademark infringement claims against Witkoff and New Valley and the counterfeit claim against all Defendants in the amended complaint (Dkt. No. 14) of plaintiff One Hanover, LLC, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED** in part and **GRANTED** in part. The portion of the motion seeking to dismiss the trademark infringement claims against Witkoff and New Valley is **DENIED.** The portion of the motion seeking to dismiss the counterfeiting claim against all Defendants is **GRANTED.**

**SO ORDERED.**

Dated:     New York, New York
           8 May 2023

_____
          Victor Marrero
          U.S.D.J.

13